Walter M. Beckley v. Commissioner. American Welding & Tank Company v. Commissioner.
Beckley v. Commissioner
Docket Nos. 42230, 42232.
United States Tax Court
1953 Tax Ct. Memo LEXIS 32; 12 T.C.M. (CCH) 1389; T.C.M. (RIA) 53396; December 8, 1953
*32 1. Income. - Correct taxable income determined. 2. Fraud. - Additions to tax for fraud disapproved. Julian H. Lifsey, Jr., Esq., Room 513, First National Bank Building, Tampa, Fla., for the petitioners. D. Z. Cauble, Jr., Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined the following deficiencies in the income tax of the petitioner, Walter M. Beckley: 50% Fraud
Year
Deficiency
Penalty
1942
$ 618.54
$ 309.27
1943
761.36
559.92
1944
194.00
97.00
1945
3,399.71
1,699.86
1946
2,787.82
1,393.91
$7,761.43
$4,059.96
He also determined the following deficiencies in tax against the petitioner, American Welding & Tank Company: Fraud
Delinquency
Year
Deficiency
Penalty
Penalty
Income Tax: 1942
$ 479.84
$ 385.95
1943
896.23
1944
278.03
139.02
1945
443.76
1946
464.18
1,063.68
Declared value excess-profits tax: 1943
$1,110.87
$ 892.76
1945
723.59
Excess-profits tax: 1943
$7,268.91
$3,634.46
$1,817.23
1945
4,819.50
2,409.75
1,204.88
(The above figures do not tally with figures used in *33 briefs of either of the parties. They are taken from the allegations made in the petitions and admitted in the amended answers.) The questions presented for decision are (1) what was the correct taxable income of the petitioners for the years in question, and (2) were the additions to tax for fraud and for delinquent filing of excess profits tax returns properly determined. Findings of Fact Walter M. Beckley (hereafter called Beckley) is an individual residing in Hillsborough County, Florida. He filed his income tax returns for the taxable years on the cash basis with the collector of internal revenue for the district of Florida. The American Welding & Tank Company (hereafter called the Corporation) is a corporation organized in 1923 under the laws of Florida. Its corporate returns for the taxable years were filed on the accrual basis with the collector of internal revenue for the district of Florida. Beckley acquired control of the Corporation in 1941 and owned 98 per cent of the stock in the taxable years. The remaining two shares were owned one each by his wife and his daughter Dorothy. At the beginning of the taxable years the Corporation was obligated to Beckley in *34 the amount of $21,447.56. This amount was made up of a note from the Corporation in the amount of $4,812.31 to Beckley's mother and accounts due from the Corporation to Beckley's mother and father totaling $11,307.95, duly assigned to Beckley. It also included accrued salary due Beckley of $5,327.30. At the time of the hearing Beckley was 54 years old. His formal education extended through the seventh grade. After completing the seventh grade Beckley worked as a laborer, a welder, and learned to assemble the inside of sewing machines. In 1917 he came to Florida with his father and mother where the three established a small tank factory which later became the petitioner Corporation. From 1917 to 1941 Beckley worked as a laborer, welder, and foreman, doing outside work under the supervision of his father. He had little knowledge of the administrative control of the Corporation. Beckley's father, who had handled all administrative and legal matters for the Corporation from its inception, became ill in 1941 and discontinued active interest in the business after having transferred his stock interest to Beckley. The Corporation's attorney went into the Armed Services in 1942 and from *35 that year through 1948 no legal advice was sought or received and no corporate minutes were drawn. During this latter period Beckley was in charge of all phases of the corporate business, both administrative and productive. He had the aid of his daughter and an accountant. The daughter did clerical work. She had a high school education and a year in business school. The accountant was the same one who kept books for the Corporation from 1930 continuously through the years in issue. He prepared the tax returns both for the Corporation and for Beckley for the taxable years. These returns were examined by Beckley in the accountant's presence before being signed by Beckley. During the years 1942 through 1946 the corporate books were kept in poor order. They did not reflect income or expense accurately for any year. Beckley had little or no knowledge of accounting procedures. He relied on his accountant whom he regarded as competent to handle the books and accounting for the Corporation. Beckley's personal bank account and the Corporation's account were carried in the same bank. Deposit slips were prepared in duplicate showing customers' names and the accounts to be credited with the *36 checks. During each year Beckley retained a large number of customer remittances which he deposited to his own account or cashed and expended. These were in part balanced by deposits transferred brom Beckley's personal account to the Corporation's account. In 1944, 1945, and 1946 these transfers amounted to $14,000. The board of directors of the Corporation under date of January 6, 1942, by resolution authorized that Beckley's salary be increased to $7,500 per annum effective January 1, 1942, with the proviso that if at any time the Corporation was not in a financial position to pay the full amount, such amounts would be credited to his personal account and paid when funds were available. Beckley reported a salary of $7,500 in 1942 of which he actually received in cash $3,900, the remaining $3,600 being credited to his personal account. In the years 1943 through 1946 Beckley's returns showed he received $3,900 per year and the corporate returns showed that amount as a deduction. There were enough earnings of the Corporation in each year to cover the full $7,500 authorized salary. Beckley did not comprehend the legal distinction or the tax effects of such distinction between himself *37 and the Corporation. In dealing with moneys of the Corporation he "figured" he "owned all the stock" and "there was nobody that could say anything about it." After the respondent's agents commenced an investigation of the returns of Beckley and the Corporation for the taxable years Beckley consulted an attorney. He was advised to file amended returns. This was done, both by the Corporation and by Beckley. The amended returns were incorrect. An accounting firm was thereafter employed and an audit was prepared with respect to both petitioners. This audit is in evidence and contains a proper and correct computation of the income of Beckley and of the Corporation for the years at issue. No part of the deficiencies for any of the taxable years was due to fraud with intent to evade tax. Opinion This proceeding involves the problem of unscrambling the affairs of the individual taxpayer from those of his wholly owned Corporation. Had adequate time been spent on this problem by the parties prior to trial it is likely that the case would never have reached the Court. The audit report referred to in our findings of fact, which is in evidence as Exhibit 5 and which was relied on by *38 the petitioners as showing proper computations of their income for the taxable years now has been accepted as correct by the respondent, except for the following items: (1) The allowance of $7,500 yearly salary to Beckley, and (2) The treatment of diverted sales proceeds as the repayment of the obligation owed Beckley by the Corporation. We think the audit properly treated both items. We are faced with a situation involving poor bookkeeping, careless income reporting, and a non-tax-wise individual who conducted his affairs and those of his wholly owned Corporation in such a way as to pose difficult problems in their untangling. On the salary item, the respondent insists that Beckley received only $3,900 per year and relies on the returns as filed and the corporate books to support this contention. Beckley argues that he was entitled to $7,500 and that he actually or constructively received that amount, despite his faulty reporting and the entries on the corporate books. On the record, we conclude that Beckley is correct. The books and returns have both been shown to be inaccurate. Beckley's authorized salary was $7,500 per year. There were always enough earnings to cover that *39 salary and because of full ownership of the Corporation Beckley could have taken down his full salary in any year. If this proceeding involved Beckley alone it is likely that the respondent would have contended (and successfully) that Beckley was taxable on the full $7,500 in each year. We think the audit treatment of this item, i.e., charging Beckley with the full $7,500, is nearer to the reality of the situation than simply to tax him with $3,900 per year. The audit thus disposes of part of the diverted sales proceeds by treating them as having been diverted by Beckley in payment of salary. The remainder of the diverted sales proceeds are treated by the audit as reductions of the obligation owed by the Corporation to Beckley. The respondent's position on this point, as we understand it, is that the diverted sales should be treated as dividend distributions to Beckley and hence taxable to him. Here again we think the audit report treatment is the more real. Why should Beckley be charged tax wise with these amounts? The Corporation owed him an obligation. He considered that the corporate funds were available to himself at any time and that when the Corporation needed funds his personal *40 funds were available to it. In the circumstances we perceive no basis for treating the diverted sales as dividends, and conclude they should properly be treated as payment of the debt owing by the Corporation to Beckley. So treated, they are not taxable to Beckley. In reaching the above conclusions we are well aware that we are avoiding detailed discussion of the nice legal questions involved. Nevertheless, we think the results reached do justice to all parties to this proceeding. Our finding of fact disposes of the fraud issue. We observed the witnesses as they testified, have carefully considered the limited experience and education of Beckley, and the apparent carelessness of the way in which the books of the Corporation were kept and all other pertinent facts. Negligence and ineptness are certainly present, but we are unable to conclude that any clear and convincing proof has been presented which would bring us to the view that any part of the deficiencies was due to fraud with intent to evade tax. One other matter remains. The respondent asserted delinquency penalties in the filing of excess profits tax returns by the Corporation in 1943 and 1945. The Corporation has not *41 contested the penalty for 1943. The matter of the penalty for 1945 can be disposed of under Rule 50. Decision will be entered under Rule 50.